UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**EDWARD E. SPERBER, M.D.**

   **Plaintiff,**

-v-

**R. JAMES NICHOLSON, Secretary,**
**Department of Veteran Affairs**

   **Defendant.**

Case No. C-3-05-363

Judge Thomas M. Rose

---

**ENTRY AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. #12) AND TERMINATING THIS CASE**

---

  This matter arises from the employment of Plaintiff Edward E. Sperber, M.D. ("Dr. Sperber") at the Dayton VA Medical Center. Defendant R. James Nicholson ("Nicholson") is the Secretary of the Department of Veteran Affairs, a federal agency which operates the Dayton VA Medical Center.

  Dr. Sperber alleges two causes of action. Count One of Dr. Sperber's Complaint is for age discrimination in violation of the Age Discrimination In Employment Act ("ADEA"), 29 U.S.C. § 633a. In Count One, Dr. Sperber alleges that Defendant's personnel action, taken on or about December 17, 2004, was based upon his age. (Compl. ¶ 9.) Dr. Sperber's attorney later clarified that Dr. Sperber's claim of age discrimination does not relate to the VA's decision to terminate his employment but relates to the VA's decision not to find Dr. Sperber another position. (Deposition of Edward E. Sperber, M.D. ("Dr. Sperber Dep.") 78 Jul. 27, 2007.)

  Count Two of Dr. Sperber's Complaint is for violation of the Whistleblower Protection Act, 5 U.S.C. §§ 2301 and 2302. Sperber alleges that the adverse employment actions taken

against him leading up to and on December 17, 2004, were taken because of his age and because he reported ongoing narcotic theft to the VA Inspector General. (Compl. ¶¶ 37, 43.)

Now before the Court is Defendant's Motion for Summary Judgment. It is now fully briefed and ripe for decision. A factual summary will first be set forth, followed by the standard of review for motions for summary judgment and an analysis of Defendant's Motion for Summary Judgment.

## FACTUAL SUMMARY

Dr. Sperber was born on May 2, 1942 and turned 62 years old in 2004. (Id. 5). After several years of private practice, Dr. Sperber joined the Veterans Administration ("VA") at West Palm Beach, Florida, in 1995. (Id. 7.) In September of 1997, Dr. Sperber transferred to the VA facility in Huntington, West Virginia. (Id. 8.) In May of 2000, he then became the Chief of Staff of the VA facility in Dayton, Ohio. (Id. 8-9.)

On March 12, 2004, Dr. Sperber was discharged from employment with the VA by Carlos B. Lott, Jr, the then acting Network Director of the Veterans Integrated Service Network 10. (Id. Ex. A.) The discharge was based upon the recommendation of Dr. Steven Cohen, M.D., who was the Director of the Dayton VA facility. (Id.)

On March 23, 2004, Dr. Sperber filed a grievance regarding his discharge by Mr. Lott. (Id. 28.) A hearing on Dr. Sperber's discharge was then conducted by a Grievance Examiner appointed by Laura J. Miller, Deputy Secretary for Health for Operations and Management, Veterans Health Administration ("Miller"). (Id. Ex. B.)

On June 22, 2004, the Grievance Examiner issued her Report of Findings and Recommendations. (Id. 28-29, Ex. B.) The Grievance Examiner recommended that the removal

of Dr. Sperber from the position of Chief of Staff and from any other VA supervisory position be sustained. She also recommended that the decision to separate Dr. Sperber from federal service be reconsidered but that no position should be created. (Id. Ex. B.)

On July 27, 2004, Miller made a final agency decision on Dr. Sperber's grievance. (Id. Ex. C.) Miller concurred with the Grievance Examiner's recommendations. (Id.) She sustained Dr. Sperber's removal from the position of Chief of Staff of the Dayton VA Medical Center. (Id.) She also directed the VHA Office of Management Support to survey all VA Medical Centers to determine where vacancies exist for a non-supervisory Pathologist. (Id.) Finally, she indicated that, if there are vacant positions, she would direct Dr. Sperber's assignment to a vacant position unless he notified her in writing by August 6, 2004, that he was unwilling or unable to relocate from Dayton. (Id.)

Next, in a letter dated August 20, 2004, Daniel Kowalski, an HR Consultant for the U.S. Department of Veterans Affairs, informed Dr. Sperber that he had identified eleven (11) vacancies for non-supervisory Pathologists. (Id. Ex. D.) Kowalski asks Dr. Sperber to identify three to five of the vacancies and list them in priority order not later than August 30, 2004. (Id.)

On August 24, 2004, Dr. Sperber's attorney wrote to Miller concerning the Report of Findings and Recommendations, Miller's grievance decision and Kowalski's letter regarding vacant non-supervisory positions. (Id. Ex. E.) This correspondence indicated that neither Dr. Sperber nor his attorney received a copy of the Report of Findings and Recommendations until July 29, 2004, and that the Report fails to adequately address the argument that one of Dr. Sperber's chief accusers engaged in multiple acts of perjury at the hearing. (Id.) This correspondence also indicated a concern that vacancies in the Dayton-Cincinnati area or other

areas closer to Dayton were being ignored. (Id.) Finally, this correspondence requested that Miller revisit the part of her decision that would require Dr. Sperber to relocate a considerable distance away from his newly established family, that Miller ensure that all vacancies are being identified and that Miller also consider creating a position for Dr. Sperber, such as the position he successfully filled at the Middletown, Ohio VA facility following his termination as Chief of Staff. (Id.)

On November 24, 2004, Miller responded to Dr. Sperber in writing. (Id. Ex. F.) Miller indicated that, since Dr. Sperber did not respond to Kowalski's query about reassignment and since Mr. McGuire had indicated that the respective positions in settlement discussions remained far apart, she had decided to assign Dr. Sperber to a non-supervisory Pathologist position at the VAMC in Los Angeles effective January 2005. (Id.) She further directed that Dr. Sperber's Official Personnel Folder reflect his demotion to Chief Grade Step 10, effective May 20, 2004. (Id.) Finally, Miller wrote that, if Dr. Sperber indicated that he did not intend to report to his new assignment, if he failed to respond by December 10, 2004, or if he responded proposing any modifications, she would sustain Dr. Sperber's removal in accordance with the Grievance Examiner's recommendation. (Id.)

On December 9, 2004, Miller again wrote Dr. Sperber's attorney. In this letter, she indicated that, since Dr. Sperber did not receive her letter of November 24, 2004, until December 2, 2004, the date by which she expected a reply was extended to December 17, 2004. (Id. Ex. G.) She further indicated that she would consider the lack of a response by December 17, 2004, as a declination of the assignment. (Id.)

In a letter to Miller dated December 15, 2004, Dr. Sperber's attorney indicated that Dr.

Sperber cannot relocate to Los Angeles due to family reasons. (Id. Ex. H.) He also offered Dr. Sperber's services as a field investigative agent for the VA while maintaining his "hub" in Dayton and repeated his request that, consistent with his age, he be treated similarly as other Dayton VA employees who were demoted and not required to relocate their families "thousands of miles away." (Id.) Finally, Dr. Sperber's attorney offered to seek mediation of the dispute. (Id.)

In a letter dated December 17, 2004, Miller indicated that she had received a letter from Dr. Sperber's attorney stating that Dr. Sperber is unable to accept the position in Los Angeles. (Id. Ex. I.) She further indicated that she believed that she had fully complied with the Grievance Examiner's recommendations. (Id.) Finally, she sustained Dr. Sperber's "removal" and indicated that, "[t]his is the final agency decision in this matter." (Id.)

On February 16, 2005, Dr. Sperber filed a Complaint of Employment Discrimination" with the Department of Veterans Affairs. (Id. Ex. J.) In this Complaint, Dr. Sperber alleged that, "[w]hen I was demoted from my previous position as Chief of Staff of the Dayton VA Medical Center, I was not assigned a position at the Dayton VA, nor anywhere close to Dayton like many younger employees who were demoted. Instead, I was transferred to a position in California, thousands of miles from my home." (Id.) The "Date of Initial Contact with ORM" on the Complaint is January 11, 2005 and the "Date of Occurrence" on the Complaint is December 17, 2004. (Id.) Finally, this is the only administrative claim that Dr. Sperber filed regarding age discrimination. (Id. 83.)

Dr. Sperber raises a whistleblower issue in addition to the age discrimination issue. During the year 2000, Dr. Sperber became aware of an alleged ongoing narcotic theft at the

Dayton VA. (Id. 83-84.) He reported the alleged theft to Dr. Cohen, the Director of the Dayton VA and to Mr. Robert Moore, the Associate Director of the Dayton VA at the time. (Id. 84-85.) Ultimately, Dr. Cohen reported the alleged theft to the VA Inspector General. (Id.) Dr. Sperber did not file an administrative claim regarding any whistleblower action that he might have had. (Id. 86-87.) Then, on October 27, 2005, Dr. Sperber filed the Complaint that is now before this Court.

## STANDARD OF REVIEW

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

However, the mere existence of a scintilla of evidence in support of the non-moving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the non-moving party is entitled to a verdict. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not

…obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c). The analysis next turns to Defendant's Motion for Summary Judgment.

## ANALYSIS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Defendants argue that they are entitled to summary judgment on Count One of Dr. Sperber's Complaint for two reasons and that they are entitled to summary judgment on Count Two for one reason. Each of Defendant's arguments will be addressed with respect to the relevant claim.

### Count One: Age Discrimination

In Count One of his Complaint, Dr. Sperber alleges that the Defendants discriminated against him because of his age. This claim, according to Dr. Sperber's attorney, relates to the VA's decision not to find Dr. Sperber another position in the Dayton Area. The Defendants argue that they are entitled to summary judgment on Count One because Dr. Sperber failed to exhaust his administrative remedies on his age discrimination claim and because Dr. Sperber cannot establish a prima facie case of age discrimination under the ADEA.

### Failure To Exhaust Administrative Remedies

The law is clear that federal employees asserting Title VII or ADEA claims must exhaust

their administrative remedies as a precondition to filing a federal court action. *Brown v. General Services Administration,* 425 U.S. 820, 832 (1976). One of the administrative remedies that must be exhausted is a requirement that the "aggrieved person must initiate contact with an [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *Horton v. Potter*, 369 F.3d 906, 910 (6th Cir. 2004) (citing 29 C.F.R. § 1614.105(a)(1) (2003)). If an employee fails to comply with the 45-day limitation period, the court may dismiss the complaint. *Id.* (citing 29 C.F.R. § 1614.107(a)(2) (2003)).

In this case, the Defendant argues that the alleged discriminatory acts about which Dr. Sperber complains occurred in July and August 2004. This is supported, according to the Defendant, by evidence that Dr. Sperber knew by August 24, 2004, that he was not being offered any assignments to any position in the Dayton area. However, the record also includes evidence that negotiations regarding Dr. Sperber's termination as Chief of Staff and subsequent assignment continued until December 17, 2004, when Miller wrote to Dr. Sperber that, in a "final agency action," she was sustaining his removal and that she had received a letter from Dr. Sperber's attorney indicating that Dr. Sperber was unable to accept the position in Los Angeles. Though Dr. Sperber may have been advised that he would likely not be offered an assignment in the Dayton area, he continued to evaluate and discuss the issue until December 17, 2004, when Miller made the final decision. Until this final decision was reached, Dr. Sperber could hardly have said that he was being discriminated against.

Miller's "final agency action" letter is dated December 17, 2004, and this is the date after which Dr. Sperber could reasonably allege discriminatory action. Dr. Sperber initially contacted

the ORM on January 11, 2005, which is well within the 45-day time period. Therefore, Dr. Sperber's age discrimination claim cannot be dismissed for failure to exhaust administrative remedies.

## Prima Facie Case of Age Discrimination

The Defendant also argues that Dr. Sperber cannot establish a prima facie case of age discrimination under the ADEA. To establish a prima facie case of age discrimination under the ADEA, Dr. Sperber must present evidence that: (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) after he was rejected, a substantially younger applicant was selected. *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 510 -511 (6th Cir. 2004) *(*citing *Burzynski v. Cohen,* 264 F.3d 611, 622 (6th Cir.2001)). Further, the fourth element may be satisfied "by showing that similarly situated non-protected employees were treated more favorably." *Id.* (citing *Talley v. Bravo Pitino Rest.,* 61 F.3d 1241, 1246 (6th Cir.1995)).

In this case, Dr. Sperber argues that his age discrimination claim is not based upon him being replaced by a younger employee but is based upon the Dayton VA's treatment of other similarly situated and younger employees differently. However, while Dr. Sperber identifies three others that may have been treated differently than he by the Dayton VA, he testifies that each of them was over 40 years of age. Thus the individuals identified by Dr. Sperber were members of the protected class and were not "non-protected." (Dr. Sperber Dep. 61-73.) In other words, Dr. Sperber has identified no similarly situated non-protected employee who was treated differently than he. He, therefore, cannot satisfy the fourth element of a prima facie case of age discrimination under the ADEA.

Summary

Dr. Sperber did not fail to exhaust the administrative remedies concerning his age discrimination claim. However, he has not identified evidence that satisfies the fourth element of a prima facie case of age discrimination. The fourth element requires a showing that similarly situated non-protected employees were treated more favorably.

Count Two: Whistleblower Claim

In Count Two of his Complaint, Dr. Sperber alleges that the Defendant violated the Whistleblower Protection Act ("WPA"), 5 U.S.C. §§ 2301 and 2302 when it discriminated against him because of his age and discriminated against him because he reported ongoing narcotic theft to the VA Inspector General.[1] The Defendants argue that they are entitled to summary judgment on Count Two because Dr. Sperber never sought administrative relief for his whistleblower claim.

The WPA of 1989 amended the Civil Service Reform Act of 1978. *Ugarte v. Johnson*, 40 F. Supp. 2d 178, 180 (S.D.N.Y. 1999). The CSRA as amended by the WPA does not give an aggrieved employee the right to seek relief directly in federal district court without first pursuing an Individual Right of Action to permit review by the Merit Systems Protection Board ("MSPB"). *Id.* at 181. However, a narrow exception to the requirement that claims be first taken to the MSPB confers jurisdiction on a federal district court of certain claims, including ADEA claims. *Id.*

In this case, Dr. Sperber has testified that he filed no administrative claim regarding his

---

[1] At his Deposition, Dr. Sperber testified that he reported the narcotic theft to Dr. Steven Cohen who then reported it to the VA Inspector General. (Dr. Sperber Dep. 83-85.)

-11-

whistleblower action. (Dr. Sperber Dep. 86.) Dr. Sperber now argues that the filing of his age discrimination claim with the Department of Veterans Affairs satisfies the requirement that a whistleblower claim be administratively pursued before it can be brought to federal court. However, this argument is unavailing for three reasons. First a whistleblower claim is distinct from an age discrimination claim. Second a whistleblower claim made by a federal employee must begin with an Individual Right of Action to the MSPB and there is no evidence that Dr. Sperber made any kind of claim to the MSPB. Third, as determined above, Dr. Sperber has not presented evidence that satisfies the requirements for an age discrimination claim. His "Whistleblower" claim is, therefore, not subject to the exception to the "administrative-remedy" requirement for certain discrimination claims. In sum, Dr. Sperber did not exhaust the administrative remedies that are necessary before a whistleblower claim by a federal employee may be brought in federal court.

## CONCLUSION

Count One of Dr. Sperber's Complaint for age discrimination is DISMISSED because Dr. Sperber has not identified evidence showing that non-protected employees were treated more favorably. Count Two of Dr. Sperber's Complaint for violation of the WPA is DISMISSED because Dr. Sperber has not identified evidence that he sought administrative relief for this claim before bringing it in federal court.

There are no genuine issues of material fact and the Defendant is entitled to judgment as a matter of law. The Defendant's Motion for Summary Judgment is GRANTED. Dr. Sperber's Complaint is DISMISSED WITH PREJUDICE. The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District

of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Nineteenth day of November, 2007.

**s/Thomas M. Rose**

_____
THOMAS M. ROSE
UNITED STATED DISTRICT JUDGE

Copies furnished to:

Counsel of Record